ANTONIO CLAUDIO, ETC., Plaintiff and Appellee, v. BLAS DELGADO, Defendant and Appellant.

No. 5940. Argued January 25, 1933.—Decided March 17, 1933.

A. L. López for appellant.  R. A. Arroyo for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is an action for damages.  It was instituted by the plaintiff minor, represented by his father, against Blas Delgado, alleging that on September 14, 1927, Bienvenido Báez, the defendant's chauffeur and acting as such, was driving along the main highway (*Carretera Central*) the automobile No. P–323 belonging to the defendant, carrying passengers in an unlawful and negligent manner, and due to that fact knocked down the plaintiff who was walking on his right at Km. 37, Hm. 3, of said highway, causing him various wounds which left him unconscious.  He had to be taken to the emergency hospital, and he was still, on the date of the complaint, November 4, 1927, unable to work, was suffering physically and morally, and under medical treatment.

The defendant filed a demurrer on the grounds that the court lacked jurisdiction, that the complaint was uncertain, and that it did not set up facts sufficient to constitute a cause of action.  Nearly two years later his demurrer was overruled.  He then answered and set up as a first defense a general denial of each and every allegation of the complaint; as a second defense, that prior to September 14, 1927, he had

sold the automobile in question to José Esterás, of Caguas; as a third defense, that on September 14, 1927, Esterás' car was traveling from Caguas to Cayey, and that there was coming in the opposite direction, along the center of the highway, a truck that did not give the automobile the right of way, in spite of the fact that the latter had blown its horn and was running slowly, the plaintiff at that time coming in the opposite direction to the automobile, leaving his place of safety and invading the automobile's right of way; and as fourth defense, that on the date the accident occurred, the automobile was in the possession of Báez to whom it had been lent by its owner Esterás.

The case went to trial, both parties presenting their evidence. After weighing the same, the court made the following findings:

"That the defendant, Blas Delgado, was, on September 14, 1927, the owner of a Chevrolet automobile, No. P–323, registered in his name in the Automobile Register of the Department of the Interior of Puerto Rico; that on September 14, 1927, said automobile was driven by Bienvenido Báez along the highway that joins Caguas and Cayey; that on arriving near Caguas, it met three youths who were walking toward Caguas, along the right-hand side of the highway, where they belonged; that said automobile, driven at excessive speed, without taking any kind of precaution for the lives of the passengers, was going along the highway in such manner that two of the youths had to jump quickly toward the ditch, but the plaintiff, Antonio Claudio, did not have time to do so and was knocked down at the moment the automobile made a zigzag; that in that accident, Antonio Claudio received severe blows on the head, another on the left arm, another on the right arm, and several injuries on the face, the scars of said blows appearing on his body, a large scar from the blow he received on the left side of the head toward the temple being prominent among them; that by reason of said accident, which was due exclusively to the negligence of Bienvenido Báez, the plaintiff momentarily lost consciousness which he recovered later when he was in the hospital receiving proper treatment. He had to have the injured parts bandaged, and he had bled from the mouth in consequence of the blows, which affected his health and subjected him

to the inconveniences, annoyances, and pain of the consequent treatments.''

The court in its statement of the case and opinion also said:

''We declare these facts proved, and after studying the evidence offered by both parties in the light of the decisions in the cases of· *Sánchez* v. *Asiatic Petroleum Co.,* 40 P.R.R. 98, and *Ramos et al.* v. *López,* 36 P.R.R. 451, as the court does not believe the defense set up by the defendant to the effect that the automobile did not belong to him and that on the date of the accident Bienvenido Báez was only a bailee (*prestatario*) of the automobile, the court is of opinion that the damages suffered by the plaintiff were due solely and exclusively to the fault and negligence of the defendant's chauffeur in the discharge of his duties, and that said defendant is liable for the said damages.

''Although it is true that there was no testimony in regard to the amount of such damages, it is no less true that the court had the defendant before it,·heard his testimony in regard to the blows received and their consequences, and saw the scars that he showed on his head, face, and hands on the date of the trial. Fortunately, this case concerned a youth eighteen years old, whose vitality enabled him to recuperate more quickly from the painful results of the accident, for which reason the court believes that an award of $500 is just and reasonable. The court is of the opinion that judgment should be rendered against the defendant for that amount, and orders the clerk to enter judgment accordingly.''

Such was the judgment rendered in this case on June 1, 1931, from which the defendant appealed, charging that the court committed three errors: First, in not holding that the negligence of the plaintiff was the proximate cause of the accident; second, in refusing to give credit to the defendant's evidence showing that the automobile did not belong to him on the date of the accident; and third, in granting an award of $500 when no evidence of damage had been presented.

The first witness to testify for the plaintiff was Ignacio Lizardi. He described the accident thus:

''On the day to which this case refers, we were coming along the highway from Cayey to the town of Caguas; the youth Antonio

Claudio came in front, I behind him, and Pascual behind me, and I heard the car coming, and then I became frightened, and Pascual and I threw ourselves toward the ditch, at the right, and then Antonio Claudio being unaware, the back of the car hit him, this way (indicating by gesture), and it hit him and threw him into that ditch at my feet.''

The automobile was No. P–323. Báez was driving it. The chauffeur gave no warning of his approach. The witness took notice of it on looking back, and it was already upon them. The three youths were walking well to the right. In order to save himself the witness had to jump to the ditch of the road.

On cross-examination, he insistently maintained what he had said. The defendant's attorney asked that he explain how the automobile struck the plaintiff down. He answered:

''Well, it was coming so fast, when we fell into the ditch, that he didn't take any notice and there the automobile made a zigzag, thus (pointing), and struck him.''

There was nothing on the highway to make the automobile go so far toward its right. When the accident occurred, the automobile went on without stopping. It was necessary to call it to have it take the injured one to the hospital.

The witness was asked several times as to whether Báez had made any statement in regard to why he was driving the automobile. The defendant objected and the court upheld the objection. Then the plaintiff offered in evidence a certificate issued by the Department of the Interior on October 4, 1927, attesting to the fact that the automobile No. P–323 which struck the plaintiff was registered in the name of Blas Delgado, of Caguas, since November 30, 1926.

When the question was repeated, the witness answered:

''He told me that he had nothing to do with that, that Blas Delgado was in charge of that matter.''

Claudio became unconscious on receiving the wounds. He recovered consciousness very late at night.

The second witness was Antonio Disdier. He gave a brief account of the accident in his own words, as follows:

"On the date to which the complaint refers I was coming along the highway that leads from Cayey to Caguas, with the youth Antonio Claudio and Ignacio Lizardi; we were walking in single file and suddenly a car came up, and on hearing the noise, we looked back, and when we looked back, the youth Antonio Claudio was in front and we were going behind; we looked back and on seeing the automobile that was coming so fast, we threw ourselves into the ditch when we saw the car on top of us, but Antonio Claudio didn't have time to hear it, and when the car passed it hit him, this way, because it seems that the chauffeur turned the steering-wheel and the car hit Antonio Claudio with the rear part of the body, and threw him into the ditch."

The automobile did not blow its horn. They were going well to the right side of the road. The highway was clear. No other vehicle obstructed Báez. It was the noise of the car that made him look back.

To the following question, "What did the chauffeur Báez do when you were going to the hospital in the automobile?" he answered, "We went on, and in the car he said that he didn't have anything to do with the accident, that the car belonged to a certain Blas Delgado, and that Blas Delgado would take care of the matter."

On being cross-examined at length, he maintained his previous statement.

Another witness, Bernardo Sánchez, was coming farther behind and testified in the same sense as the preceding witnesses.

The plaintiff himself testified:

"That we were coming along and I was the one in front, and when the boys did thus, I turned suddenly and I knew nothing more. . . Well, Pascual Merced, who is a friend of mine, and Ignacio Lizardi were coming. . . I saw that they were jumping, thus, and when I heard a noise behind me I went to look, I didn't know anything more. . . When I woke up they were putting ice-caps on me; and I saw this hand bandaged, and a bandage here, too. . . . This on the head and on the left side."

He described the wounds that he received, showing the scars, and stated that he has become a little deaf; that when he bends over he gets dizzy, bleeds from the mouth, and does not feel as he did formerly: "I feel sort of dazed." When the accident occured he was sixteen years old. When he testified he was about eighteen.

The father of the plaintiff was then called to testify. He described how he found his son on September 14, 1927, and how he has remained. He remembers that on that day the defendant arrived with "Don Juan" and the latter said to him in the presence of the defendant: "That I should be calm, that I should not worry, that they would give me $250."

His son was under treatment in the private hospital of Dr. Mercado for about seventeen days. He added, "I bought bandages and some things like that; but we have many expenses besides, because they have sent me bills and Don Blas promised to pay the expenses."

The evidence of the defendant consisted of his own testimony and of the document to which we will refer later. In testifying, he stated that on the date of the accident the automobile No. P–323 belonged to José Esterás. The witness, however, appears as the owner in the Department of the Interior. He bought the automobile on a conditional sale and they did not agree to his transferring it to Esterás, to whom he had sold it.

Said document is a certificate of the Treasurer of Puerto Rico issued on September 11, 1930, showing that in the tax distribution of Caguas for 1927–1928, José Esterás appears as paying for an automobile, license No. 8580, valued at $200.

In addition to the certificate issued on October 4, 1927, to which we referred above, the plaintiff presented another of like origin, from which it appears that the automobile P–323, 1927–28, license No. 8580, was registered in the name of Blas Delgado up to December 16, 1928, when it was transferred to José Esterás.

In our opinion, none of the errors assigned was committed.

The evidence in regard to the manner in which the accident occurred was not even contradicted and is sufficient. The appellee invokes in his favor the cases of *Rivera* v. *Graham,* 34 P.R.R. 1, and *Meléndez* v. *Alvarez,* 35 P.R.R. 316, and says:

"According to the above authorities, an automobile that is passing another automobile or a person is not obliged to leave at its right more space than is necessary for avoiding a collision with the car or person that is going in front. And that the driver of an automobile has a right to assume, on passing to get in front of a person who is in a place of safety, that said person will not suddenly leave such place and put himself in the path of the vehicle."

The cases are not applicable. Here the evidence reveals that the three youths were walking ahead, along the side of the highway. Claudio, the plaintiff, first, Lizardi behind him, and Pascual behind Lizardi. The automobile was traveling fast and gave no warning that it was going to pass. Pascual and Lizardi heard the noise of the car and scarcely had time to jump into the ditch in order to save themselves. Less fortunate, Claudio did not exactly understand what was happening and on turning around without changing his position, he was struck by the automobile and injured.

The youths were going along the highway in the exercise of their right as part of the public, which they were. There was also going along the highway in the exercise of its right, the automobile driven by Báez. The rights of citizens are coordinate, and if Báez wished to pass those who were walking ahead, he was bound to respect their right by exercising his own without violating that of others. He could pass them. It is a natural thing that he should pass them. They were walking; he was riding in a machine. But in doing so he should have taken the necessary precautions. These are prescribed by the law itself: "Persons operating motor vehicles on the public highway," says section 12(*a*) of the Act of 1916, to regulate the use of motor vehicles in Puerto Rico, and for

other purposes (Sess. Laws, p. 140), "shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property." In subdivision (e) of said section it adds: "On overtaking another vehicle or person, warning shall always be given and the person or slower-running vehicle shall draw to the right as far as practicable, and the overtaking vehicle shall always pass to the left."

Even though they had not been traveling on the right side of the highway, as the evidence shows that the youths in this case were doing, they should have been warned. Even though they had been improperly walking in the center of the road, the automobile could not pass them, striking them, without warning them. The violation that pedestrians may commit by leaving the path designed for them at the edge of the highways, can not be punished by the person travelling in a machine that is following them, by violently striking them.

In the instant case there is not the slightest justification for the action of the defendant's chauffeur. Criminal negligence is what his acts reveal.

He was entitled to travel on his right. He not only had a right, but it was his duty, to guide the automobile he was driving, along that side. But ahead of him, the young pedestrians were occupying that right, and if he wished to pass them he should have acted in accordance not only with the law but with the most rudimentary principles of respect for human life.

A public vehicle is involved. In accordance with the law and the jurisprudence, its owner was liable for the acts done by his chauffeur, in the course of his employment, as was the case here. In so holding, the district court committed no error whatever.

In regard to the ownership of the vehicle, the evidence was conflicting. Perhaps the defendant had really sold the automobile to Esterás and Esterás was the true owner on the date of the accident, but it is certain that the evidence offered

by the plaintiff was sufficient to show that the automobile still belonged to the defendant, and the evidence presented by the latter to prove the contrary is not conclusive. The court could adjust, as it did adjust, the conflict against the defendant, and as it has not been shown that in so doing it was moved by passion, prejudice, or partiality, or that it committed manifest error, its conclusion must prevail.

In regard to the damages, it is true that no specific evidence thereof was presented, but the general evidence offered is sufficient to support an award such as that granted by the court. The plaintiff became unconscious. He suffered serious injuries, one of them on the head. He was under treatment for some seventeen days in a private hospital. More than two years later, on the date of the trial, he was still suffering from the consequences of the accident. What less than $500 can be fixed as compensation in such a case?

The judgment appealed from must be affirmed.